## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GLENN J. HUGHES, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1527** |
| **AMERICAN NATIONAL PROPERTY &** <br> **CASUALTY COMPANY** | **SECTION "C"(1)** |

### ORDER AND REASONS[1]

Before the Court is Defendant American National Property & Casualty Company's ("ANPAC") Motion for Summary Judgment, which Plaintiff Glenn J. Hughes, Sr. ("Hughes") has opposed. Rec. Doc. 21; Rec. Doc. 28. Having examined the memoranda of counsel, the record, and the applicable law, defendant's motion is GRANTED for the following reasons.

### I. BACKGROUND

Hughes pursued a claim for flood damages with ANPAC after his southeastern Louisiana home was damaged by Tropical Storm Lee in September 2011. Rec. Doc. 28, p. 1-2. Hughes' policy is a Standard Flood Insurance Policy ("SFIP") and was in full effect at the time of the 2011 storm. Rec. Doc. 28-1, p. 1; Rec. Doc. 21, p. 1. ANPAC is a Write Your Own ("WYO") program insurance carrier participating in the U.S. Government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968, as amended. 42 U.S.C § 4001 *et seq.*; Rec. Doc. 21, p. 1. After Hughes notified ANPAC of the claim, the carrier assigned the flood loss to Sweet Claims Services ("Sweet"). Sweet provided Hughes with an independent adjuster, Tommy Cotton ("Cotton"), to assist him with estimating the loss, in accordance with Article VII(J)(7) and (8) of the SFIP. 44 C.F.R. § 61, app. A(2), art. VII(J)(7-8) (2011); Rec. Doc. 28-1, p. 2; Rec. Doc. 21-1, p. 5-6.

---

[1]Kayla Lawrence, a second-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.

During an inspection of the property early in September, Cotton provided Hughes with a NFIP claims handbook as well as a letter which detailed Article VII(J)(1-9) of the SFIP. Rec. Doc. 21-2, Exh. A, p. 3; Rec. Doc. 28-3, p. 1; Rec. Doc. 21-8, Exh. G, (letter). Article VII(J)(1-9), entitled "Requirements in Case of Loss," contains the insured's duty to provide a completed and sworn proof of loss when seeking payment on a claim. 44 C.F.R. § 61, app. A(2), art. VII(J). Both Hughes and Cotton signed the letter from the adjustor stating the requirement that Hughes must supply a signed Proof of Loss. Rec. Doc. 21-8, Exh. G. Cotton later determined that the total amount payable would be $2,586.14, which included building damages of $3,586.14 less $1,000 deductible, and contents damages of $0.00. Rec. Doc. 28-8, Exh. 4, p. 3, 7; Rec. Doc. 28-9, Exh. 5, p. 1, 6.

In her affidavit, Mary Ross-Goodnough, who is employed by a vendor servicing ANPAC, stated that on October 29, 2011, the adjuster "sent a proof of loss for this amount to the Plaintiff for his signature." Rec. Doc. 21-2, Exh. A, p. 3. She continued, "Plaintiff has never executed and returned the proof of loss." *Id.* Hughes, however, insists that he returned the proof of loss to the adjuster, along with eight other documents. Rec. Doc. 28-3, p. 2. In his unsworn declaration submitted to the Court, Hughes states that he faxed the proof of loss to the adjuster. *Id.* Hughes argues that he met with the adjuster on numerous occasions at the property, and that defendant should have not only his agent's submissions, but also plaintiff's submissions. Rec. Doc. 28 at 5. Plaintiff states that Exhibits 1 through 8, which include filled out worksheets of the losses, estimates, the NFIP "Final Report," photographs showing that his property had been repaired from previous damage, and his contractor's estimate which was sent to ANPAC, are legal proof of loss. *Id*; Rec. Docs. 28-5 *through* 28-12, Exhs. 1 *through* 8.

In March of 2012, ANPAC notified Hughes' counsel that Hughes' claim had been closed without payment because Hughes had not provided a sworn proof of loss. Rec. Doc. 21-11, Exh. J, p. 1. The letter again outlined Article VII(J)(1-9) of the SFIP and noted that some items could not be considered because documentation of prior repairs was never provided. *Id.* at 1-2. The letter also reminded Hughes' counsel that the SFIP is a federal policy and as such it is under the jurisdiction of the federal government. *Id.* at 2.

On May 7, 2012, Hughes filed suit in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, claiming ANPAC breached the contract, "deliberately under calculated the damages," and failed to tender funds, creating bad faith. Rec. Doc. 1-1, p. 1. Hughes seeks damages for breach of contract, compensatory, statutory and bad faith damages, interest, and attorney's fees. Rec. Doc. 1-1, p. 2. ANPAC then filed for removal to this Court, which Hughes did not oppose. Rec. Doc. 1; Rec. Doc. 28, p. 4.

ANPAC now moves for summary judgment, claiming that Hughes failed to comply with the conditions precedent contained in Article VII of the SFIP. Rec. Doc. 21. ANPAC also asserts that summary judgment should be granted for Hughes' claims entitling him to interest and attorney's fees. Rec. Doc. 21-1, p. 19-22. Hughes responds that he has complied with the provisions of the SFIP, and he points to eight documents in the record to support his argument. Rec. Doc. 28, p. 5; Rec. Doc. 28-5 *through* 28-12, Exhs. 1 *through* 8. He concedes Defendant's argument regarding interest, and maintains that he should be awarded attorney's fees because there was bad faith.

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary Judgment is warranted only when the record indicates that there is "no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is no genuine dispute for trial when "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party." *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999). Disputed facts must be material, and material facts are only those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Bazan v. Hidalgo City,* 246 F.3d 481, 489 (5th Cir. 2001) ("[a]n issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham"). Further, when presented with a motion for summary judgement, courts consider facts and evidence in the light most favorable to the non-moving party, which is Hughes in this case. *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009).

### B. Standard Flood Insurance Policy ("SFIP")

FEMA operates the NFIP, pursuant to the National Flood Insurance Act of 1968. 42 U.S.C § 4001 *et seq*. The terms and conditions of all SFIPs are fixed by FEMA, and provisions cannot be waived without the express written consent of the Federal Insurance Administrator. 44 C.F.R. § 61, app. A(2), art. VII(D); *see also Marseilles Homeowners Condo. Ass'n Inc. v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1055 (5th Cir. 2008) ("FEMA sets the terms and conditions of SFIPs"). FEMA can either directly issue flood insurance policies, or have private insurers known as WYO companies issue policies. *Gallup v. Omaha & Cas. Ins. Co.*, 434 F.3d 341, 342 (5th Cir. 2005) (private insurers); *Richardson v. Am. Bankers Ins. Co. of Fla.*, 279 F.

App'x 295, 298 (5th Cir. 2008) ("[f]lood insurance policies can be issued directly by FEMA or through private insurers"). WYO companies are the fiscal agents of the United States by statute, and all payments on SFIP claims come from the federal treasury. *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 386 (5th Cir. 2005).

Because federal funds are implicated under SFIP claims, "the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." *Id.* at 388 (citing *Heckler v. Cmty. Health Servs. of Crawford Cnty, Inc.*, 467 U.S. 51, 63, 104 S. Ct. 2218, 2226, 81 L. Ed. 2d 42, 54 (1984)). Therefore, a policyholder is obligated to comply with all the policy requirements contained in the SFIP when seeking payment on a claim. 44 C.F.R. § 61, app. A(2), art. VII(R) ("[insured] may not sue [insurer] to recover money under this policy unless [insured has] complied with all the requirements of the policy"); *see also Forman v. F.E.M.A.*, 138 F.3d 543, 546 (5th Cir. 1998) (affirming summary judgment in insurer's favor when the insured failed to comply with the "conditions defined by Congress for charging the public treasury" (internal quotes omitted)).

### C. Compliance with SFIP Requirements

ANPAC contends that Hughes failed to comply with the legal obligations imposed upon him as conditions precedent prior to filing his lawsuit. Rec. Doc. 21, p. 1. Specifically, ANPAC argues Hughes: failed to timely submit a complete and sworn proof of loss, failed to timely provide documentation to support his claim for additional benefits, failed to provide the requested evidence of prior flood repairs, and failed to sue Defendant in the proper jurisdiction. Rec. Doc. 21-1, p. 18. Because an NFIP participant cannot file a lawsuit without having complied with all policy requirements, summary judgment must be granted if Hughes failed to perform the legal obligations that ANPAC has outlined. 44 C.F.R. § 61, app. A(2), art. VII(R).

5

First, the Court addresses ANPAC's argument that Hughes did not timely provided a proof of loss as described by the policy. The proof of loss provision, which is found in Article VII(J)(4) of the SFIP, states:

> Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to you, and which furnishes us with the following information:
> a.  The date and time of loss;
> b.  A brief explanation of how the loss happened;
> c.  Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
> d.  Details of any other insurance that may cover the loss;
> e.  Changes in title or occupancy of the covered property during the term of the policy;
> f.  Specifications of damaged buildings and detailed repair estimates;
> g.  Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
> h.  Details about who occupied and insured building at the time of loss and for what purpose; and
> i.  The inventory of damaged personal property described in J.3. above.

44 C.F.R. § 61, app. A(2), art. VII(J)(4). Hughes argues that he supplied a proof of loss and points to specific documents in the record, including: worksheets prepared by Hughes and Cotton containing descriptions and replacement costs of damaged items, Cotton's Final Report containing a payable amount of $2,586.14 for the building and contents damages, five photographs of prior flood repairs that were sent to ANPAC, ANPAC's confirmation that Cotton's Final Report had been reviewed and that the claim was in the process of being concluded, and Hughes' contractors estimate of $29,930.00. Rec. Doc. 28-5 *through* 28-12, Exhs. 1 *through* 8. None of these documents are signed by Hughes. *Id.*

The submission of a sworn proof of loss is a strict requirement. *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998) (holding that an insured's failure to provide a sworn proof of loss "relieved the federal insurer's obligation to pay what otherwise might be a valid claim"). For example, in *Marseilles Homeowners Condominium Association Inc. v. Fidelity National*

6

*Insurance Co.*, the court held an insured could not "substantially comply" with the proof of loss requirement by submitting relevant claim information but not providing a sworn proof of loss. 542 F.3d 1053, 1055-56 (5th Cir. 2008). The court reasoned that the theory of substantial compliance is "contrary to federal statutory law" because the insured must "show prior compliance with *all* of the policy's requirements." *Id.* at 1056 (relying on the court's decision in *Richardson v. Am. Bankers Ins. Co. of Fla.*, 279 F. App'x 295, 298 (5th Cir. 2008), which held the notion of substantial compliance is contrary to binding precedent that requires the proof of loss requirement to be strictly construed).

Hughes has not provided evidence that he supplied a sworn proof of loss. The documents he relies on are not sworn, and they do not contain all the information required by Article VII(J)(4), and as such they do not comply with the policy requirements of the SFIP. Also, like the Fifth Circuit held in *Marseilles*, substantial compliance is not an available argument for Hughes, as the proof of loss requirement is strictly enforced. 542 F.3d at 1055-56. Hughes knew of his obligation to provide the proof of loss, as he signed a letter in September which outlined Article VII(J)(4). Rec. Doc. 21-8, Exh. G. He also received a letter in March which notified him that his claim was being closed because he failed to provide a proof of loss. Rec. Doc. 21-11, Exh. J. The letter again outlined Article VII(J)(4). *Id.* Even if ANPAC had not informed Hughes on multiple occasions of his obligations, Hughes would still be responsible for submitting a sworn proof of loss. *See Heckler*, 467 U.S. at 63 ("those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents . . ."). Because Hughes did not supply a document that contains the information required by the proof of loss provision of the SFIP, no rational trier of fact could find that he is entitled to receive payment for his SFIP claim.

Because the Court has determined summary judgment is warranted in this case, the Court declines to discuss the remainder of ANPAC's arguments pertaining to Hughes' legal obligations

under the SFIP. Moreover, the Court declines to address the litigants' battle over attorneys' fees, as the issue is now moot due to the Court's granting of ANPAC's motion for summary judgment.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's motion for summary judgement is GRANTED. Rec. Doc. 21.

New Orleans, Louisiana, this 16th Day of July, 2013.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE